UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

v.                                          Criminal No. 4:16cr55

JEROME PAUL FROSTMAN,

      Defendant.

## OPINION AND ORDER

    This matter is before the Court after issuance of an Order requiring Defendant to show cause why the Court should not reject his guilty plea and Plea Agreement, and vacate its prior finding of guilt. ECF No. 38. For the following reasons, the Court orders the parties to schedule a hearing to address the Court's conclusions in this Opinion and Order.

### I. FACTUAL AND PROCEDURAL BACKGROUND

    On May 16, 2016, Defendant, Jerome Paul Frostman, was charged in a criminal complaint with one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). ECF No. 1. On June 14, 2016, a grand jury of this Court returned a four count indictment charging Defendant with one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); and three counts of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). ECF Nos. 20, 21. Defendant entered a plea of not guilty at his

arraignment. ECF No. 28. The Court was later advised that Defendant had entered into a plea agreement with the Government and wished to change his plea to guilty as to Count Two, distribution of child pornography. Defendant appeared before the Court for a guilty plea hearing as to Count Two on August 8, 2016. ECF No. 33. During the guilty plea hearing, the following exchanges, as well as many others not directly relevant here, took place between the Court and Defendant:

> THE COURT: I have two questions for you about your Constitutional rights. First, do you believe that any of your Constitutional rights have been violated in any way in connection with the seizure of any physical or tangible evidence relating [to] your offense by any police or other law enforcement agent, federal or state?
>
> DEFENDANT: No, Your Honor.
>
> THE COURT: Second: Do you believe that any of your Constitutional rights have been violated in any way in regard to the taking of any oral or written statement from you by any police, governmental or law enforcement agency, or by anyone directly or indirectly having a connection with such an agency or a person in such an agency?
>
> DEFENDANT: No, Your Honor.
>
> ***
>
> THE COURT: Have you had the opportunity to discuss your case with your attorney, Mr. Grindrod?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: Have you actually discussed all the facts in the case with him?
>
> DEFENDANT: Yes, Your Honor.

THE COURT:  Are you satisfied that Mr. Grindrod has fully considered all the facts and discussed with you any possible defenses that you may have to the charges against you?

DEFENDANT:  I am, Your Honor.

***

THE COURT:  Have you discussed with your attorney both the sentencing guidelines and the[] statutory sentencing factors?

DEFENDANT:  I have, Your Honor.

THE COURT:  Has Mr. Grindrod explained to you the various considerations that go into determining these factors?

DEFENDANT:  He has, Your Honor.

***

The Court then asked Defense counsel the following questions to which he responded:

THE COURT:  Mr. Grindrod, has Mr. Frostman been competent and able to cooperate with you in this case?

MR. GRINDROD:  Yes, Your Honor.

THE COURT:  Have you discussed the facts of the case in detail with him?

MR. GRINDROD:  Yes, Your Honor.

THE COURT:  Are you satisfied that there are no meritorious defenses that the defendant might raise in the case which, in your opinion, would result in a not-guilty verdict by a jury?

MR. GRINDROD:  Mr. Frostman, in consultation with me, has decided that this plea agreement is in his best interest, Your Honor.

3

THE COURT:  Can you elaborate on why you didn't answer the question "Yes" or "No"?

MR. GRINDROD:  Your Honor, I don't think I can -- I don't think I can answer the question as phrased without revealing opinion work product.

THE COURT:  Is that an answer you're going to be giving in every single guilty plea, pretty much?

MR. GRINDROD:  I mean, obviously if the Court directly orders me to answer the question as phrased, Your Honor, I'll comply with that order.  I just, I think it is -- that that question would -- requires me in this case and in other similar -- in basically every case where it's asked --

THE COURT:  It's not unique to this case?  That's what I'm trying to figure out.

MR. GRINDROD:  Yes, Your Honor, that's correct.

THE COURT:  I may reflect more on that after the hearing.

MR. GRINDROD:  I understand, Your Honor.

THE COURT:  All right. Are you satisfied that the defendant's constitutional rights have been observed so far in this case?

MR. GRINDROD:  We're not pursuing any constitutional claims in this litigation, Your Honor.

THE COURT:  Mr. Grindrod, you always make me think. Have you -- how many times have you met with Mr. Frostman, approximately?

MR. GRINDROD:  At least 10 times, Your Honor.

THE COURT:  And do you think that you've discussed all the facts of the case in detail with him?

MR. GRINDROD:  Yes, Your Honor.

* * *

4

> THE COURT: So Mr. Grindrod, when you say that you're not asserting any constitutional claim when I ask whether you're satisfied that the defendant's constitutional rights have been observed so far in this case, it holds out the specter to me of the possibility that something could be asserted later. So that's why -- maybe I should ask it this way: Are you aware of any constitutional claims to be made in this case in his defense?
>
> MR. GRINDROD: I don't believe I can answer that question without revealing attorney work product, Your Honor.

After the Defendant pled guilty, the following exchange took place between the Court and Defendant:

> THE COURT: Are you entering this plea of guilty freely and voluntarily?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: Are you pleading guilty because you are, in fact, guilty of the crime to which you're pleading guilty?
>
> DEFENDANT: Yes, Your Honor.

Aug. 8, 2016 Plea Tr. 13-15, 18-21, 24, ECF No. 44. After this exchange and further discussion, the Court accepted the plea agreement, accepted the guilty plea, and made a finding of guilt, having previously indicated that it would give further thought to Defense counsel's responses to the two questions at issue. Id. at 19, 21-23, 25.

As a result of the responses provided by Defense counsel at such hearing, and upon further reflection, the Court was left in doubt as to whether Defendant pled guilty voluntarily and with

an appropriate understanding of his trial and constitutional rights, and the waiver of such rights that results upon entry of a guilty plea.   Therefore, on August 16, 2016, the Court issued an Order requiring Defendant to (1) show cause why the Court should not reject his guilty plea and the Plea Agreement and vacate its finding of guilt; and (2) explain, as necessary, why Defense counsel could not affirm or deny the existence of potential meritorious defenses or constitutional claims related to the charged offenses.   ECF No. 38 (hereinafter "Show Cause Order").

On August 26, 2016, Defense counsel filed a Response to the Court's Show Cause Order.   ECF No. 39.   In his Response, Defense counsel asserts that his responses to the questions posed during the guilty plea hearing, regarding the existence of a potential meritorious defense or constitutional violation, are protected by the attorney opinion work product doctrine.   Defense counsel further asserts that such answers are not necessary for the Court to comply with Federal Rule of Criminal Procedure 11, to find that Defendant entered his guilty plea voluntarily and with appropriate knowledge of his constitutional rights and the waiver of such rights, and to accept Defendant's guilty plea or plea agreement.   Id.   Nonetheless, Defense counsel requests that, to the extent the Court requires such questions be answered or is inclined to reject Defendant's guilty plea if

6

such questions are not answered, the Court reopen the guilty plea proceedings to allow Defense counsel to waive the work product protections and substantively answer the Court's questions regarding the existence of potential meritorious defenses and constitutional violations.

On September 2, 2016, the Government filed its Response to Defendant's submission and the Court's Show Cause Order. ECF No. 40. The Government argues that the Court's inquiry during the guilty plea hearing in this matter did not infringe on work product protection, and Defense counsel's failure to answer the Court's questions regarding the existence of a potential meritorious defense or constitutional violation casts serious doubt on the voluntary nature of the guilty plea and Defendant's knowing waiver of his constitutional rights. Id. The Government, therefore, requests that the Court reject Defendant's guilty plea and Plea Agreement, and vacate its finding of guilt. Further, on September 2, 2016, the Government filed a "Motion for Inquiry into Potential Conflict of Interest or Breakdown in Communication," seeking to determine whether new Defense counsel should be appointed to represent Defendant. ECF No. 41. The Government asserts that Defense counsel's responses during the guilty plea hearing, and Defense counsel's response to the Court's Show Cause Order, suggest a possible conflict of interest or a breakdown of communication between Defendant and

Defense counsel. Accordingly, the Government requests that the Court inquire into such circumstances and advise Defendant of his right to independent counsel. Id.

On September 8, 2016, Defense counsel filed a consolidated Reply to the Court's Show Cause Order and the Government's Motion. ECF No. 43. The Government did not file a Reply in further support of its Motion to Inquire. Thus, both the Court's Show Cause Order and the Government's Motion are ripe for review. The Court will first address resolution of its Show Cause Order, and then address the Government's Motion to Inquire.

## II. STANDARD OF REVIEW

This Court's earlier Show Cause Order directed Defense counsel to explain why his guilty plea colloquy responses to the Court's questions, regarding the existence of potential meritorious defenses or constitutional violations, are protected by the attorney opinion work product doctrine. Therefore, the Court must, as an initial matter, determine whether answering the questions at issue implicates attorney opinion work product. If answers to the questions at issue would implicate attorney opinion work product, the Court must then determine whether any exception to the attorney opinion work product doctrine permits

the Court to overrule Defense counsel's objections.[1]   Finally,
the Court must determine the scope of the inquiry permitted as a
result of any such exception to the attorney opinion work
product doctrine.   The Court first broadly addresses the legal
standards applicable to each respective determination.

### A. Standard for Determining Whether Attorney Opinion Work Product Protection Doctrine Applies to Court's Questions

The work product doctrine, recognized by the Supreme Court
of the United States ("Supreme Court") in Hickman v. Taylor, 329
U.S. 495 (1947), "protects an attorney's work done in
preparation for litigation," In re Grand Jury Proceedings #5,
401 F.3d 247, 250 (4th Cir. 2005), by "confer[ring] a qualified
privilege on documents prepared by an attorney in anticipation
of litigation." Solis v. Food Employers Labor Relations Ass'n,

---

[1] This is not a case where there has been any express or implied waiver
of the work product doctrine.   While the Court recognizes that there
are cases from some jurisdictions that suggest the possibility of an
implied waiver in somewhat analogous situations, there is no precedent
from our Court of Appeals that has extended implied waiver that far.
Therefore, the Court will only address the standard for determining
whether there is an exception to the opinion work product doctrine
under these circumstances.   See In re John Doe, 662 F.2d 1073, 1079
(4th Cir. 1981) (noting that "the ability to protect work product
normally extends to both clients and attorneys . . . and the attorney
or the client, expressly or by conduct, can waive or forfeit it, but
only as to himself"); In re Martin Marietta, 856 F.2d 619, 622-26 (4th
Cir. 1988) (discussing express and implied waiver of work product
protection); see also Bittaker v. Woodford, 331 F.3d 715, 719, 722
(9th Cir. 2003) (explaining, prior to adoption of Fed. R. Evid. 502,
express and implied waiver concepts applicable to work product
protection).

644 F.3d 221, 231 (4th Cir. 2011).[2]  The doctrine "reflects the strong 'public policy underlying the orderly prosecution and defense of legal claims.'"  United States v. Nobles, 422 U.S. 225, 236-37 (1975) (quoting Hickman, 329 U.S. at 516).  In Nobles, the Supreme Court quoted from Hickman to reiterate the policy behind the work product doctrine, observing that "a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients."  Id. at 237.  The Court went on to observe that "[i]n performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."  Id.  Such "work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways - aptly though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.'"  Id.  If such "materials were open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten," and "[a]n attorney's thoughts, heretofore inviolate, would not be his own."  Id.

---

[2] Though not directly applicable here, Federal Rule of Evidence 502(g) provides that "'work product protection' means the protection the applicable law provides for tangible materials (or its intangible equivalent) prepared in anticipation of litigation or for trial." Federal Rule of Civil Procedure 26(b) addresses work product protection in civil matters.

"Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital," because "[t]he interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." Id. at 238. "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system," and can therefore arise in various contexts. Id.

In the criminal context, the work product doctrine, as applied in federal courts, rests on federal common law. See In re Grand Jury Proceedings #5, 401 F.3d at 250; Thomas E. Spahn, The Attorney-Client Privilege and the Work Product Doctrine: A Practitioner's Guide § 33.5 (3d ed. Va. CLE Publ'n 2013). Our Court of Appeals has recognized that both attorneys and non-attorneys can create protected work product. In re Doe, 662 F.2d 1073, 1079 (4th Cir. 1981). Attorney-created work product, therefore, constitutes a subset of protected work product.

There are exceptions to the attorney work product doctrine, "but simply stated, an attorney is not required to divulge, by

11

discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation, even if they have been reduced to writing." Id. at 1077; see In re Grand Jury Proceedings #5, 401 F.3d at 250 (noting that the work product "privilege encompasses both 'fact' work product and 'opinion' work product"). Fact work product consists of "documents prepared by an attorney that do not contain the attorney's mental impressions," while opinion work product "contains th[e] fruits of an attorney's mental processes." In re Doe, 662 F.2d at 1076 n.2. "[T]he party claiming the protection bears the burden of demonstrating the applicability of the work product doctrine." Solis, 644 F.3d at 232 (citing In re Grand Jury Proceedings, 33 F.3d 342, 353 (4th Cir. 1994)).

### B. Standard for Determining Whether Any Exception to the Attorney Opinion Work Product Doctrine Applies

"Work product is 'generally protected and can be discovered only in limited circumstances.'" Smith v. Scottsdale Ins. Co., 621 F. App'x 743, 746 (4th Cir. 2015) (quoting In re Grand Jury Proceedings, 33 F.3d at 348). "Fact work product is discoverable only upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." Id. (quoting Chaudhry v. Gallerizzo, 174 F.3d 394, 403 (4th Cir.

1999)).  "[O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances."[3]  Id.

When determining whether rare and extraordinary circumstances exist to justify disclosure of opinion work product, a court must remember that the rationale for the work product doctrine rests on the "principle that the integrity of the adversary process must be safeguarded in spite of the desirability of the free interchange of information before trial."  In re Doe, 662 F.2d at 1078 (quoting Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 487 F.2d 480, 482-83 (4th Cir. 1973).  However, in certain limited circumstances, as described below, the desirability of the free interchange of information overcomes the need to protect an attorney's work product.  When balancing these competing interests, it is helpful to remember that, while "the [attorney] work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case[,] . . . the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system."  Nobles, 422 U.S. at 238.  Therefore, when

---

[3] This standard has been referred to by some commentators as the "strict protection standard," as opposed to an "absolute standard" or a "balancing standard."  See Jeff A. Anderson et. al., The Work Product Doctrine, 68 Cornell L. Rev. 760, 821-31 (1983).

considering whether the protection of attorney opinion work product may be pierced, courts must also remember that, absent a "compelling showing" that "rare situations" exist such that "weighty considerations of public policy and a proper administration of justice would militate against the nondiscovery of an attorney's mental impressions," the "attorney's opinion work product should remain immune from discovery." In re Doe, 662 F.2d at 1080 (quoting In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977)). Such rare or extraordinary circumstances include, for example, situations where an attorney engages in illegal activity or fraud and attempts to shield himself from criminal prosecution by using the opinion work product protection (the "crime-fraud exception"). See In re Doe, 662 F.2d at 1079 ("we hold that there is a fraud exception to the opinion work product doctrine"); In re Grand Jury Proceedings #5, 401 F.3d at 252 n.3 ("Prima facie evidence of the illegal activities of an attorney clearly suffices as an extraordinary circumstance needed to discover opinion work product"). The Court is aware of no case, and counsel have cited to no case, addressing the application of attorney work product protection, or the rare or extraordinary circumstances exception, to a guilty plea colloquy.

Determining whether attorney opinion work product protection may be overcome in this context requires careful

14

consideration of the scope and purposes of the guilty plea procedure utilized by federal courts. During the guilty plea hearing, the Court has the duty to "address the defendant personally in open court and determine that the [guilty] plea is voluntary," Fed. R. Crim. P. 11(b)(2), and that "there is a factual basis for the plea," id. 11(b)(3). Additionally, "[b]efore the court accepts a plea of guilty . . . the court must inform the defendant of, and determine that the defendant understands" a variety of trial rights, including "the right to be represented by counsel," "the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses," and "the defendant's waiver of . . . trial rights if the court accepts a plea of guilty." Id. 11(b)(1) (emphasis added). Further, and particularly important on the facts of this case, a guilty plea waives the right to object to illegally obtained evidence, such as the fruits of an illegal search or an illegally obtained confession.[4] See United States v. Castillo, 439 F. App'x 195, 196 n.* (4th Cir. 2011) ("Because an unconditional guilty plea generally waives all antecedent, nonjurisdictional issues, . . . [the

---

[4] Notably, the Supreme Court has squarely held that a defendant who pleads guilty, with the advice of competent counsel, cannot attack his conviction collaterally where he pled guilty because of the prior coerced confession or its potential admissibility at trial. McMann v. Richardson, 397 U.S. 759, 772 (1970).

defendant's] right to challenge on appeal a Fourth Amendment issue raised in a motion to suppress is waived by his unconditional guilty plea." (citing Tollett v. Henderson, 411 U.S. 258, 266-67 (1973))); United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993) ("[A] guilty plea constitutes a waiver of all nonjurisdictional defects . . . ." (citing Parker v. Ross, 470 F.2d 1092, 1093 (4th Cir. 1972))). Thus, the Court may also inform a defendant that a guilty plea waives his right to challenge non-jurisdictional errors, including deprivation of constitutional rights that occur prior to the plea, and determine that the defendant understands such waiver before accepting the defendant's guilty plea. See Tollett, 411 U.S. at 267 ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). The Supreme Court has explained that the guilty plea procedure, outlined in Federal Rule of Criminal Procedure 11, serves two purposes:

> First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends

> to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous postconviction attacks on the constitutional validity of guilty pleas.

McCarthy v. United States, 394 U.S. 459, 465 (1969); accord United States v. Damon, 191 F.3d 561, 564 (4th Cir. 1999).[5] Thus, during a guilty plea hearing, the Court inquires of a defendant on a number of subjects to ensure that these two purposes are fulfilled.

A guilty plea "is a grave and solemn act to be accepted only with care and discernment," because such "plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge." Brady v. United States, 397 U.S. 742, 748 (1970); see Boykin v. Alabama, 395 U.S. 238, 242 (1969) ("A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." (citing Kercheval v. United States, 274 U.S. 220, 223 (1927))). Thus, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant

---

[5] "In enacting the 1983 Amendments to Rule 11, Congress instructed courts to evaluate Rule 11 errors under a harmless error standard. This direction overruled the Supreme Court's decision in McCarthy v. United States, 394 U.S. 459 (1969), which established a *per se* reversal standard for violations of Rule 11." United States v. Wurth, 56 F.3d 63, 1995 U.S. App. LEXIS 13281, at *5 n.1 (4th Cir. 1995) (unpublished table opinion).

circumstances and likely consequences." Brady, 397 U.S. at 748. To ensure that a guilty plea is entered voluntarily and that a defendant's waiver of constitutional rights is knowing and intelligent, the Court is accorded great discretion in determining how best to conduct the mandated discussion with a defendant. See United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991) ("'The manner of ensuring that the defendant is properly informed is committed to the good judgment of the district court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence.'" (quoting United States v. Reckmeyer, 786 F.2d 1216, 1221 (4th Cir.), cert. denied, 479 U.S. 850 (1986))).

Federal Rule of Criminal Procedure 11 establishes the "constitutional minimum requirements" that a judge must fulfill during a guilty plea, Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir. 1991), and "the minimum advice that must be provided to the defendant by the court," Fed. R. Crim. P. 11 advisory committee's note to 1989 amendment. While a judge is not required to inquire or inform a defendant about additional matters, "'a judge is free to do so if he feels a consequence of a plea of guilty in a particular case is likely to be of real significance to the defendant.'" Appleby v. Warden, N. Reg'l Jail & Corr. Facility, 595 F.3d 532, 537 (4th Cir. 2010)

18

(quoting Fed. R. Crim. P. 11 advisory committee's note to 1974 amendment)); see Libretti v. United States, 516 U.S. 29, 50 (1995) (addressing whether a judge is required to mention waiver of the right to have a jury decide forfeiture matters when taking a guilty plea); United States v. Hawthorne, 806 F.2d 493, 497 n.7 (3d Cir. 1986) (addressing whether a defendant needed to be advised regarding the imposition of restitution). To the extent that there is any ambiguity or misunderstanding regarding a defendant's guilty plea, it is "incumbent upon the defendant or defense counsel to clear that up with the court and to satisfy the court that the defendant was voluntarily entering a knowing and intelligent guilty plea." United States v. Morrison, 32 F. App'x 669, 672 (4th Cir. 2002).

While Rule 11 guides the Court's inquiry at a plea colloquy it "'does not specify that any particular type of inquiry be made." United States v. Heid, 651 F.3d 850, 854 (8th Cir. 2011) (quoting Fed. R. Crim. P. 11 advisory committee's note to 1974 amendment)) (emphasis added). Accordingly, in determining whether a guilty plea is voluntary or whether a sufficient factual basis exists for the plea, "'[a]n inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case.'" Id. (quoting Fed. R. Crim. P. 11 advisory committee's note to 1974

amendment)) (emphasis added).  Further, to permit "unrestrained candor," and to foster the atmosphere necessary for a determination of voluntariness and the factual basis for a guilty plea, statements of a defendant and defense counsel during plea discussions or made in the course of a Rule 11 guilty plea proceeding are generally inadmissible in future proceedings, even if such guilty plea is rejected or withdrawn. Fed R. Crim. P. 11 advisory committee's note to 1979 amendment; see Fed. R. Crim. P. 11(f); Fed. R. Evid. 410; Fed R. Crim. P. 11 advisory committee's note to 1979 amendment (explaining that the inadmissibility of statements made during a plea colloquy hearing "is not limited to statements by the defendant himself," but rather, it extends to "statements by defense counsel regarding defendant's incriminating admissions to him") (emphasis added).

### C. Standard for Determining the Scope of the Exception to the Attorney Opinion Work Product Doctrine

"[T]he work product privilege is . . . designed to balance the needs of the adversary system: promotion of an attorney's preparation in representing a client versus society's general interest in revealing all true and material facts to the resolution of a dispute." In re Martin Marietta Corp., 856 F.2d at 624.  However, as described above, when rare and

extraordinary circumstances exist such that an exception applies, opinion work product protection may be overcome.

Our Court of Appeals has explicitly recognized an exception to work product protection, which is referenced herein as the "crime fraud exception" but also is sometimes referred to as the crime/fraud/tort exception. See Rambus, Inc. v. Infineon Techs. AG, 220 F.R.D. 264, 280-81 (E.D. Va. 2004). When applying this exception, the Fourth Circuit has noted that prima facie evidence of a crime or fraud by a client vitiates an attorney's work product privilege as to non-opinion work product. In re Grand Jury Proceedings #5, 401 F.3d at 252. However, because an attorney has his own right to assert the opinion work product privilege, when an attorney asserts such privilege, "those seeking to overcome the opinion work product privilege must make a prima facie showing that the 'attorney in question was aware of or a knowing participant in the criminal conduct.'" Id. at 252 (quoting In re Grand Jury Proceedings, 33 F.3d at 349). If that showing is made, the scope or reach of the crime-fraud exception depends upon demonstration of "a close relationship between the desired materials and an alleged criminal or fraudulent conduct." In re Grand Jury Investigation, 352 F. App'x 805, 809 (4th Cir. 2009) (citing In re Grand Jury Subpoena, 419 F.3d 329, 343 (5th Cir. 2005) (addressing scope of the exception and concluding that "the proper reach of the

21

crime-fraud exception when applicable does not extend to all communications made in the course of the attorney-client relationship, but rather is limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct") and In re Grand Jury Proceedings #5, 401 F.3d at 251); see In re Sealed Case, 676 F.2d 793, 812 n.74 (D.C. Cir. 1982) ("Once a sufficient showing of crime or fraud has been made, the privilege vanishes as to all material related to the ongoing violation").[6]

These cases suggest that the scope of any exception to attorney opinion work product protection would be limited in nature, just as is the scope of the crime-fraud exception. In the same way that the reach of the crime-fraud exception depends upon demonstration of "a close relationship between the desired materials and an alleged criminal or fraudulent conduct," the reach of any other exception should depend upon demonstration of

_____

[6] There are some parallels between the limited scope of the crime fraud exception applicable to attorney opinion work product and the limited scope of a waiver of the attorney opinion work product protection. In the waiver context, our circuit "adheres to a full subject-matter waiver rule as to . . . non-opinion work product. . . ." In re Grand Jury, 734 F. Supp. 1207, 1213 (E.D. Va. 1990), vacated in part on other grounds, 902 F.2d 244 (4th Cir. 1990) (citing In re Martin Marietta Corp., 856 F.2d at 623). Disclosure of such non-opinion work product "outside a privileged relationship will waive the privilege as to all information related to the same subject matter." In re Martin Marietta Corp., 856 F.2d at 623. However, as to opinion work product, our circuit "has embraced the limited waiver concept." Id. Therefore, when waiver of the opinion work product protection occurs, waiver is limited to the "matters actually disclosed." Id. at 624. Such limited waiver is therefore similar to the limited scope or reach of the crime fraud exception.

a close relationship between the desired materials or information and the rare and extraordinary circumstances justifying disclosure.

### III. DISCUSSION

#### A. Is Attorney Opinion Work Product Implicated?

The Court must first determine whether straightforward "yes" or "no" answers to the Court's "meritorious defenses" and "constitutional rights" questions would require an attorney to provide opinion work product. Our Court of Appeals has defined the attorney work product doctrine as follows: "[S]imply stated, an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation, even if they have been reduced to writing." In re Doe, 662 F.2d at 1077. Here, Defense counsel has asserted the protection of the opinion work product doctrine, which covers opinions he has formed about any phase of the litigation, while the Government contends that the two questions at issue are "very limited in scope" and do not "implicate the attorney work product doctrine" in the context of a guilty plea colloquy. Gov't Response 14, ECF No. 40. The Government further argues that if the Court "finds that the attorney work product doctrine is applicable," and no exception applies, the Court should conduct a conflict of interest inquiry. Id. at 14-15.

While a plausible argument can be made that attorney opinion work product protection does not extend to shield defense counsel from answering the Court's limited "meritorious defenses" and "constitutional rights" questions, the Court finds that the better reasoned conclusion is that even though the Court only asks for a "yes" or "no" answer, the questions as posed ask counsel to reveal his opinion. Such opinions are "opinions he has formed about [a] phase of the litigation" based upon his knowledge of the case facts and his assessment of how the law applies to such facts. In re Doe, 662 F.2d at 1077. Therefore, the questions seek the result of the Defense counsel's analysis and preparation of Defendant's case, implicating the opinion work product of Defense counsel. Nobles, 422 U.S. at 238 (explaining that attorney "work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case"). For these reasons, the Court concludes that the protection of the attorney opinion work product doctrine extends to such one-word conclusory statements, made in response to questions from the Court, seeking the attorney's mental impressions, conclusions, or opinions.

## B. Is Attorney Opinion Work Product Protection Overcome by a "Guilty Plea Exception"?

The next step in the analysis requires the Court to carefully balance two competing interests: the need to further the "interests of clients and the cause of justice" by shielding Defense counsel's mental impressions, conclusions, or opinions from inappropriate disclosure, In re Grand Jury Subpoena, 220 F.3d 406, 408 (5th Cir. 2000) (internal quotations omitted), versus the interest in assuring that Defendant's guilty plea is voluntary, Defendant's waiver of constitutional rights is knowing and intelligent, and that a thorough record of such plea and waiver is made. See DeFusco, 949 F.2d at 116. Because the Court has asked defense counsel to comment with "yes" or "no" answers to the questions at issue, and because such answers require Defense counsel to divulge attorney opinion work product, these interests have collided. Therefore, the Court must determine whether there is an exception to the attorney opinion work product doctrine on these facts.

At the outset, the Court notes that there are many cases reciting the fact that a federal district court, during a guilty plea hearing, has inquired of defense counsel as to whether he agrees with a defendant's decision to plead guilty or has advised him to do so, whether the defendant has been competent and able to cooperate during the case, whether defense counsel

25

discussed the case with the defendant, whether there were any meritorious defenses, or whether defense counsel has advised defendant to plead guilty, some of which questions call for disclosure of attorney opinion work product. See, e.g., Carbajal v. United States, No. 4:11cr186, 2016 U.S. Dist. LEXIS 93803, at *2-*6 (E.D. Tex. June 21, 2016), report and recommendation adopted, No. 4:11cr186(1), U.S. Dist. LEXIS 93196 (E.D. Tex. July 18, 2016) (unpublished) (detailing colloquy with defense counsel regarding the defendant's competency, discussions with the defendant, and agreement with the defendant's plea); Ashlock v. United States, No. 4:11cr49, 2013 U.S. Dist. LEXIS 133750, at *5-*9 (E.D. Va. Sept. 19, 2013) (unpublished) (reviewing defense counsel's responses regarding the defendant's competency, discussions with the defendant, and existence of meritorious defenses); United States v. Thompson, No. 08cr209, 2009 U.S. Dist. LEXIS 7304, at *1-*2 (D. Me. Jan. 29, 2009) (asking defense counsel "Are you satisfied that the Defendant has pleaded guilty because he is actually guilty" and noting defense counsel's unsuccessful assertion of attorney-client privilege in response); Johnson v. Gray, 705 F. Supp. 244, 252 (E.D. Pa. 1989) (detailing defense counsel's responses to the court's questions regarding voluntariness of plea and knowledge of evidence); United States v. Aleman, 417 F. Supp. 117, 125 (S.D. Tex. 1976) (listing questions to defense counsel

regarding the defendant's competency, discussions with the defendant, meritorious defenses, the defendant's constitutional rights, counsel's agreements with the defendant's choice to plead guilty); see also Weikle v. Vest, No. 13-1278, 2015 W. Va. LEXIS 126, *64 (W. Va. Feb. 9, 2015) (recounting counsel's responses to questions during the plea colloquy regarding counsel's opinion of: any advantages to proceeding to trial, the existence of any meritorious defenses, and whether accepting the plea was in the client's best interest). There are also opinions discussing the fact that a court has inquired of defense counsel regarding a defendant's waiver of constitutional suppression issues and the right to appeal such issues, as a guilty plea results in a waiver of all pre-plea claims of constitutional deprivation. See, e.g., United States v. Arrellano, 213 F.3d 427, 429 (8th Cir. 2000) (detailing questions to defense counsel regarding waiver of appeal rights and suppression issue and the defendant's best interests in waiving such rights). Moreover, the Benchbook for U.S. District Court Judges, which Defense counsel cites in his brief in support of his position, actually contemplates limited inquiry of defense counsel regarding his opinions. See generally Fed. Jud. Ctr., Benchbook for U.S. District Court Judges § 2.01 "Taking pleas of guilty or nolo contendere" (6th ed. 2013) (recommending that a court inquire of defense counsel regarding

27

the defendant's competency if defendant says he has been treated for mental illness or addiction or if he says he is currently under the influence of any drug, medication or alcohol); <u>id.</u> § 1.06 "Waiver of indictment" (recommending that a court inquire of defense counsel whether there is any reason defendant should not waive indictment); <u>id.</u> § 1.09 "Waiver of Jury Trial" (recommending that a court ask several questions of defense counsel to determine whether the accused has made a knowing and voluntary waiver and is competent to waive jury trial).

These sources reflect the fact that defense counsel in guilty plea hearings routinely answer questions of the court that ask for information covered by the attorney opinion work product doctrine. However, none of these cases directly address the question of whether there is an exception to the attorney opinion work product doctrine permitting such questions, or the kind of questions at issue in this case. Moreover, the motions and briefs before the Court cited no such cases.[7]   The absence of

---

[7]   At least one jurisdiction's Rules of Professional Conduct specifically recognize that a lawyer may reveal confidential information when "the disclosure is impliedly authorized to advance the best interests of the client and is either reasonable under the circumstances <u>or customary in the professional community</u>."  N.Y. Rules Prof'l Conduct r. 1.6(a)(2)(emphasis added).  As the two questions at issue in this case have been part of this judge's standard guilty plea colloquy for many years, as well as the colloquys of many other judges of this Court, and this is the first objection of this type that this judge remembers, it appears that such limited disclosures are customary in the local professional community when made to advance the best interests of the client.  Comment Five to Rule 1.6 of the New York Rules also notes that "a lawyer may be impliedly authorized . . .

such precedent suggests that defense attorneys have either failed to recognize the issue altogether, or that defense attorneys have concluded that they are impliedly authorized to make attorney opinion work product disclosures in order to facilitate a satisfactory conclusion to the matter. While it may be a combination of both, here Defense counsel has concluded that the better course is to raise the objection and allow the Court to rule on it.[8] Therefore, having already concluded that there is opinion work product protection in this context, the Court turns to addressing whether, on these facts, a "Guilty Plea Exception" warrants disclosure of such otherwise protected information.

As explained above, attorney opinion work product "can be discovered only in very rare and extraordinary circumstances."[9]

---

to make a disclosure that facilitates a satisfactory conclusion to a matter." Id. at cmt. 5. Though less specific in nature, the corollary to the New York Rules appears in Rule 1.6(a) of the Virginia Rules of Professional Conduct, and Comment Five to such Rule, with the Virginia standard permitting disclosures that are impliedly authorized to carry out the representation. Va. Rules Prof'l Conduct r. 1.6(a) cmt. 5.

[8] Defense counsel has clearly stated, both at the guilty plea hearing and in his response to the Show Cause Order, that he will respond to the questions if ordered to do so, i.e., if the Court finds that there is no protection or that an exception applies. Plea. Tr. 18-19, ECF No. 44; Def.'s Response 6, 14, ECF No. 39.

[9] The Court again notes that it may require Defense counsel to divulge fact work product if there is both "substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." In re Grand Jury Proceedings #5, 401 F.3d at 250 (internal quotation omitted). However, the Court does not here address such exception because the "extraordinary circumstances"

Chaudhry, 174 F.3d at 403 (internal quotation omitted); In re Grand Jury Subpoenas, 454 F.3d 511, 520 (6th Cir. 2006) (the "fullest extent of the [work product] privilege[] [is] not necessarily mandated by the United States Constitution" and "may be overridden" by exception); see Caplan & Drysdale, Chartered v. United States, 491 U.S. 617, 632 n.10 (1988) (fact that a federal statutory scheme may be at odds with disciplinary rules hardly renders the federal scheme invalid); see also Restatement (Third) of the Law Governing Lawyers § 89 (Am. Law Inst. 2000) (recognizing extraordinary circumstances justifying disclosure). Our Court of Appeals, quoting the Eighth Circuit, has noted that the "unwillingness to recognize an absolute immunity for opinion work product stems from the concern that there may be rare situations, yet unencountered by [the] court, where weighty considerations of public policy and a proper administration of justice would militate against the nondiscovery of an attorney's mental impressions. Absent such a compelling showing, the attorney's opinion work product should remain immune from discovery." In re Doe, 662 F.2d at 1080 (quoting In re Murphy,

---

exception related to opinion work product is a higher standard and a finding of extraordinary circumstances, at least in this context, necessarily includes the finding of "substantial need" and "undue hardship" required for invocation of the fact work product exception. Further, Defense counsel has only asserted that his potential responses include opinion work product, and therefore, a determination of the applicability of the fact work product exception is unnecessary.

560 F.2d at 336)).   Our circuit has summarily described these situations as "extraordinary circumstances."  Id. at 1079.

The Court finds that, in this guilty plea context, three primary factors compel the conclusion that weighty considerations of public policy and a proper administration of justice, constituting rare and extraordinary circumstances, militate against the nondiscovery of defense counsel's mental impressions, and thus support the recognition of an exception to attorney opinion work product protection.

### 1.   Attorney Asserting Work Product Protection When Client Is Not Doing So

Because Defendant wishes to plead guilty and waive his constitutional rights, the Court is required to determine whether Defendant's guilty plea is voluntary and the waiver of Defendant's constitutional rights is knowing and intelligent. Although the "ability to protect work product normally extends to both clients and attorneys, . . . and the attorney or the client, expressly or by conduct, can waive or forfeit it, but only as to himself," In re Doe, 662 F.2d at 1079 (internal citation omitted), it is a rare circumstance indeed where an attorney asserts the protection during a guilty plea hearing despite his client's failure to do so and his client's desire to enter a plea of guilty pursuant to a plea agreement.   Here, Defendant answered all of the Court's questions without

objection, and he stated that he did not believe that his constitutional rights had been violated, and that he was satisfied that his attorney had fully considered all the facts and discussed with him any possible defenses that he might have to the charges against him. Plea Tr. 13-14, ECF No. 44. While Defense counsel answered "yes" to the Court's question as to whether Defendant had been competent and able to cooperate with him in the case, id. at 18, Defense counsel then asserted attorney opinion work product protection in response to the Court's "meritorious defenses" and "constitutional violations" questions. Defense counsel later explained to the Court, in a hypothetical context, and as an example of why an attorney might assert attorney opinion work product, that when he sees a constitutional violation that may not result in suppression, he can discuss that with his client, and with the direction of his client, not pursue that claim. Id. at 21. Defense counsel further explained that, in such a hypothetical situation, "the process of explaining my, how – what legal issue I see, my analysis of the issue and what led to my conclusion not to raise that issue, is the heartland of opinion attorney work product. It's my legal analysis of a potential claim and of why I did or did not make a decision to raise that claim in this litigation." Id. at 22.

While it is true that an attorney can assert attorney opinion work product protection even if the client is not asserting the protection, such assertion must occur in the rarest of circumstances in a guilty plea context.  When the Fourth Circuit held "that there is a fraud exception to the opinion work product doctrine," it noted that while "[i]t is true that the lawyer has the ultimate expression of the work product rule, . . . [t]he purpose of the work product doctrine nonetheless is not to endow lawyers as individuals with an untouchable status."  In re Doe, 662 F.2d at 1079.  The Court went on to observe that the "work product rule recognizes the lawyer's services as an indispensable part of the judicial scheme, but it was not designed as a fringe benefit for protecting lawyers who would, for their personal advantage, abuse it."  Id.

The Court does not suggest, by quoting this passage, that Defense counsel is actively trying to abuse the rule, but the assertion of the rule in these circumstances frustrates the Court's obligation to assure such plea is made knowingly, voluntarily, and intelligently and thus works an interference with his client's efforts to plead guilty.  Such interference may not reflect a disagreement between the Defendant and Defense counsel; it may simply reflect the fact that Defense counsel does not wish to risk divulging all the details of his thought

processes in counseling the Defendant's guilty plea, or that he is concerned that a failure to raise the issue could prejudice current or future clients.   But it presents the specter of Defense counsel interfering with the efforts of this client to plead guilty, and therefore failing to pursue the best interests of his client by making an impliedly authorized disclosure to carry out the current representation.   It is true that the Defendant did not expressly waive opinion work product protection when he answered the Court's questions.   However, his response, that he did not believe that his constitutional rights had been violated, reflects some understanding on his part of how the facts apply to the law.   The juxtaposition of the Defendant stating that he did not believe his constitutional rights had been violated, and Defense counsel refusing to say whether he believed Defendant's constitutional rights had been observed so far in the case, suggests an incongruence of interests.

"[A] lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients."   Hickman, 329 U.S. at 510 (emphasis added); see In re Grand Jury Subpoena, 220 F.3d 406, 408 (4th Cir. 2000) ("The purpose of the work product privilege is to further 'the interests of clients and the cause of justice' by shielding the lawyer's mental processes from his

adversary"). Under these circumstances, it is difficult to see how the assertion of opinion work product protection by Defense counsel furthers the interests of this client and the cause of justice - it appears to be interfering with such interests and risking disqualification of counsel. See United States v. Basham, 561 F.3d 302, 323 (4th Cir. 2009) ("A district court is free to disqualify counsel[,] even if the defendant is willing to waive a conflict of interest[,] because of the judiciary's 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" (quoting Wheat v. United States, 486 U.S. 153, 160 (1988))). One Virginia commentator made the following general observation regarding such apparent circumstances:

> If the disagreement between the client and the lawyer involves strategy calls, the lawyer normally must bow to the client's ultimate decision on those calls or else withdraw from the representation. And if the lawyer's attempt to veto the waiver rests on the lawyer's self-interest, one would think that the client's power to make the final decision would be even stronger. In fact, a lawyer trying to resist discovery of work product in order to avoid some embarrassment or liability probably should not even be representing the client on that matter, given the inevitable conflict between the lawyer's interests and the client's interests.

Spahn, supra, § 47.204.

The rarity of such circumstances, and the potential for a conflict of interest in such circumstances, highlights the

weighty considerations of public policy and the proper administration of justice that are at stake in a guilty plea hearing. As explained above, the Court is charged with the requirement to address the defendant personally in open court in order to determine that the guilty plea is being made voluntarily and that there is a factual basis for the plea. Fed. R. Crim. P. 11(b)(2)-(b)(3). In doing so, the Court must assure that the Defendant understands a variety of trial rights. Id. 11(b)(1). Because an unconditional guilty plea waives all antecedent, non-jurisdictional issues, including any alleged deprivation of constitutional rights that occur pre-plea, if such an issue exists, the Court may wish to inform Defendant of such fact in order to assure that Defendant understands the effect of his guilty plea. Tollet, 411 U.S. at 267; Willis, 992 F.2d at 490. However, there is no way to know about such an issue without asking the basic kinds of questions at issue here.

Pleading guilty is "a grave and solemn act to be accepted only with care and discernment" because "it is defendant's consent that judgment of conviction may be entered without a trial," which is a waiver of his constitutional right to a jury trial. Brady, 397 U.S. at 748. Such "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Id.

Therefore, the Court concludes that "weighty considerations of public policy" counsel against Defendant waiving his constitutional rights and accepting the consequences of a guilty plea without the Court being able to ask the kinds of questions at issue here in order to assure itself that the plea is made voluntarily, knowingly, and intelligently. As "'[t]he manner of ensuring that the defendant is properly informed is committed to the good judgment of the district court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence,'" the Court also concludes that "a proper administration of justice" requires that the Court have the ability to inquire of Defense counsel about attorney opinion work product in determining whether the guilty plea is made voluntarily, knowingly, and intelligently. See Heid, 651 F.3d at 854.

For example, if Defense counsel believes that the Defendant's constitutional rights have been violated, but that such violation would not result in suppression of evidence recovered as a result of such violation, Defense counsel could tell the Court about the situation without specifically discussing the manner of alleged violation, and the Court could ask the Defendant whether he did in fact discuss that general circumstance with Defense counsel, and whether he understands that he is waiving the right to seek suppression of such

evidence. District Courts are required to address the defendant personally in open court so that the court may, having the benefit of seeing the defendant's facial expressions and hearing his voice inflections (also known as "body language"), determine whether he is pleading guilty voluntarily, knowingly, and intelligently. In some cases, more questioning will be required; in other cases, fewer questions. While some courts may go further down that road than others, it is a determination uniquely within the court's discretion, consistent with the gravity of the defendant's decision to plead guilty and the court's responsibilities at such a guilty plea hearing.

The fact that Rule 11(f) incorporates a prohibition on later use against a defendant of "statement[s] made during a proceeding on" a guilty plea, including statements by defense counsel, reinforces the Court's conclusion that, on these facts, there is an exception to the attorney opinion work product doctrine. Fed. R. Crim. P. 11(f); Fed. R. Evid. 410(a)(3); Fed. R. Crim. P. 11 advisory committee's note to 1979 amendment. The protections of Rule 11(f) and Federal Rule of Evidence 410 provide a safe space and assurances to a defendant and his counsel that, answering these kinds of limited questions and facilitating the Court's determination that the plea is voluntary, knowing, and intelligent, will not result in undue prejudice to the defendant.

38

Finally, while the Court is aware that the canons of professional conduct do "not purport to state the law governing the attorney-client privilege," and presumably the work product privilege/doctrine as well, NLRB v. Harvey, 349 F.2d 900, 906 (4th Cir. 1965), and that the Virginia Rules of Professional Conduct also recognize the distinction between the "attorney client privilege (which includes the work product doctrine) in the law of evidence and the rules of confidentiality established in professional ethics," Va. Rules of Prof'l Conduct r. 1.6 cmt. 3, the Rules of Professional Conduct are instructive in this case. In this instance, they provide context for the manner in which Defense counsel is proceeding, and they reinforce the Court's conclusions. As just noted, the Virginia Rules of Professional Conduct, which govern the conduct of attorneys practicing in this Court, E.D. Va. Local Crim. R. 57.4(I), treat attorney-client privilege as including the work product doctrine, Va. Rules of Prof'l Conduct r. 1.6 cmt. 3, and specifically state that a "lawyer shall not reveal information protected by the attorney-client privilege under applicable law . . . except for disclosures that are impliedly authorized in order to carry out the representation . . . ." Id. r. 1.6(a). While it appears to this Court that the limited disclosure sought by the Court's questions would facilitate Defendant's guilty plea and "carry out the representation," it also appears

that Defense counsel has decided to proceed more cautiously and seek an order from the Court. Indeed, even if Defense counsel is not impliedly authorized to answer the Court's questions, Rule 1.6(b)(1) of the Virginia Rules of Professional Conduct specifically provides that "the lawyer may reveal . . . such information to comply with law or a court order." Id. r. 1.6(b)(1). However, it is instructive that Defense counsel answered the Court's question asking whether Defendant had been competent and able to cooperate with him in the case. See United States v. Kendrick, 331 F.2d 110, 114 (4th Cir. 1964) (holding "attorney-client privilege protects only the client's confidences, not things which, at the time, are not intended to be held in the breast of the lawyer, even though the attorney-client relation provided the occasion for the lawyer's observation of them"); but see id. at 115 ("Any expression as to the client's mental competency necessarily embraced more than facts observable by anyone; it comprehended conclusions drawn in the course of an association that is uniquely regarded in the law") (Soboleff, C.J., specially concurring); Bishop v. Superior Ct., 724 P.2d 23, 28-29 (Ariz. 1986) (en banc). In the Court's view, response to the competency question is authorized by Rule 1.6(a) without recourse to Rule 1.6(b)(1) because, as Comment 5 states, the attorney "is impliedly authorized to make disclosures about a client when appropriate in carrying out the

representation." While Virginia Rule 1.14(c) specifically recognizes that, "when taking protective action" for a client with suspected diminished capacity, an attorney is "impliedly authorized under Rule 1.6(a) to reveal information about the client, but only to the extent reasonably necessary to protect the client's interests," Defense counsel's response to this question was not an attempt to take protective action under Rule 1.14(c). Rather, in the Court's view, it was an impliedly authorized effort to carry out the representation and achieve the client's desired result, and it may have been separately authorized by Kendrick - though it is not entirely clear that the attorney-client privilege holding in Kendrick is applicable to the attorney opinion work product issue here as the attorney has his own right to protect opinion work product. In any case, if Defense counsel was impliedly authorized to make a disclosure of his opinion regarding Defendant's competence, as the Court thinks is the case, then Defense counsel is also impliedly authorized to make limited disclosures of his opinion, regarding the existence of meritorious defenses and violations of constitutional rights, in order to carry out the representation and facilitate the conclusion desired by Defendant. Nevertheless, Defense counsel has apparently concluded that he must first invoke work product protection and seek a ruling from the Court, in the manner provided by the Virginia Rules of

Professional Conduct.  Va. Rules of Prof'l Conduct r. 1.6(b)(1), cmts. 11-12.

For these reasons, the Court concludes that when, during a guilty plea hearing, a criminal defendant does not assert work product protection, but his defense attorney thereafter asserts attorney opinion work product protection in response to the Court's questions seeking to determine whether defendant is pleading guilty voluntarily, knowingly, and intelligently, weighty considerations of public policy and a proper administration of justice militate in favor of piercing attorney opinion work product protection.  Such an invocation of the doctrine constitutes a rare and extraordinary circumstance justifying an exception to attorney opinion work product protection.

### 2.  Adversarial Process

In determining that rare circumstances exist where weighty considerations of public policy and a proper administration of justice militate against non-discovery of attorney opinion work product, the Court also relies on the history and development of the attorney work product doctrine, particularly its development to promote the adversarial process and to protect competing interests among litigants.  The attorney work product doctrine arose, initially, to promote the adversary system "by protecting the confidentiality of papers prepared by or on behalf of

attorneys in anticipation of litigation," and allowing "attorneys to prepare cases without fear that their work product will be used against their clients." Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991) (citing Hickman, 329 U.S. at 510-11). The "doctrine is [meant] to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation." United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980); see In re Doe, 662 F.2d at 1078 (explaining that a lawyer preparing "for trial should not be hampered by the knowledge that he might be called upon at any time to hand over the result of his work to his opponent") (quotation omitted). The doctrine reflects a compromise between the need to safeguard "the integrity of the adversary process" and "the desirability of the free interchange of information before trial." Duplan Corp., 487 F.2d at 482-83 (citing Hickman, 329 U.S. at 511).

In the present case, application of the attorney work product doctrine to the narrow "yes" or "no" questions of the Court does not serve the historical purposes discussed above. The need to protect Defense counsel's work product during a guilty plea proceeding is significantly diminished because, while the adversarial proceeding is ongoing, the adversarial

nature of such proceeding is diminished at the guilty plea stage
of the case.  See Bishop, 724 P.2d at 26-27 (determining that
opinion work product questions asked of defense counsel by court
at competency hearing were, in part, permitted because of
hearing's essentially non-adversarial objective).  At a guilty
plea hearing, a defendant and counsel appear, typically after
engaging in plea discussions with the Government and preparing a
plea agreement and a statement of facts for presentation to the
Court, to allow the defendant to admit to certain illegal
conduct, plead guilty to an offense, and waive certain
constitutional protections.  While a more limited ongoing
adversarial process is still present during a guilty plea
hearing, and opposing counsel is present during a guilty plea
hearing, the entity seeking the disputed work product
information is not the opponent or his counsel, but the Court —
the non-adversarial body charged with the "proper administration
of justice" and tasked with assuring that the defendant is
pleading guilty voluntarily, knowingly, and intelligently.
Additionally, unlike the typical circumstance in which the
attorney opinion work product doctrine is asserted, the disputed
work product information in this matter is not sought for the
purpose of allowing the opponent (the Government) to prepare for
trial, but to ensure that Defendant is entering into the guilty
plea voluntarily and is knowingly waiving his constitutional

rights.    While it is true that disclosure of attorney opinion work product could prejudice a defendant regarding certain disputes at the later sentencing hearing, or in other ways, it is very difficult to understand how the Court's limited questions in this case would prejudice the Defendant.    While Defense counsel may believe that potential follow-up questions might prejudice Defense counsel's other existing or future clients, as discussed above, such belief may well mean that Defense counsel should withdraw from the case if he cannot reconcile such concern with his obligation to the current client.    In any case, it is difficult to understand how the limited questions at issue here could work a prejudice to Defense counsel, or his other existing or future clients. However, if follow-up questions present specific issues of prejudice, counsel is always free to explain such issue in general terms so the Court can consider how to best proceed.    In this fashion, the Court can balance the interests at stake, and the attorney can reveal information only to the extent necessary to "carry out the representation."    See Va. Rules of Prof'l Conduct r. 1.6(a), 1.14(c).

### 3. Role of the Court

The unique role of the Court in the guilty plea process also supports the Court's conclusion that this is a rare circumstance where weighty considerations of public policy and a

proper administration of justice militate against non-discovery of attorney opinion work product.  The Court has the exclusive duty to assure that a criminal defendant who is pleading guilty does so voluntarily, knowingly and intelligently.  See Boykin, 395 U.S. at 243 n.5.  The Court is accorded great discretion in determining how best to conduct the mandated guilty plea colloquy.  DeFusco, 949 F.2d at 116.  For example, the Court may inquire of Defendant, defense counsel, or the attorney for the Government in determining whether a guilty plea is voluntary or whether a sufficient factual basis exists for the plea.  "Rule 11 'does not specify that any particular type of inquiry be made. . . .  An inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case.'"  Heid, 651 F.3d at 854 (quoting Fed. R. Crim. P. 11 advisory committee's note to 1974 amendment).  Further, as noted above, to permit "unrestrained candor," and to foster the atmosphere necessary for a determination of voluntariness and the factual basis for a guilty plea, statements of a defendant and defense counsel during plea discussions or made in the course of a Rule 11 guilty plea proceeding are inadmissible in future proceedings, even if such guilty plea is rejected or withdrawn.  Fed R. Crim. P. 11 advisory committee's note to 1979 amendment.

Because a guilty plea "is a grave and solemn act to be accepted only with care and discernment," Brady, 397 U.S. at 748, the Court must satisfy itself that Defendant's guilty plea was entered voluntarily and that his constitutional rights were waived knowingly and intelligently. In doing so, the judge becomes a finder of fact and a de facto witness who may take into consideration his own observations of the defendant in determining whether he is proceeding voluntarily, knowingly, and intelligently. See Bishop, 724 P.2d at 28 (noting, at a competency hearing, that "[o]n questions of competency to stand trial, not only is the judge a finder of fact, he is also a de facto witness who may take into consideration his own observations of the defendant" and should "be able to utilize [defense] counsel's knowledge"). This unique responsibility and role is evidenced by the great discretion trial judges are given in determining how best to conduct the mandated discussion with defendants. DeFusco, 949 F.2d at 116. In this respect, the role of the trial judge is different than in most other contexts. Therefore, a proper administration of justice requires that the trial judge, in making the determination that a plea is voluntary, knowing, and intelligent, have the latitude to ask defense attorneys questions that may implicate attorney opinion work product. See Thompson, 2009 U.S. Dist. LEXIS 7304, at *1-*4 (finding that, when defense counsel has negotiated a

plea agreement with the government on behalf of the defendant, defense counsel's refusal to answer the court's standard plea colloquy question – "Are you satisfied that the Defendant has pleaded guilty because he is actually guilty?" - prevents the court from accepting the defendant's guilty plea because the court cannot "adequately determine that [the defendant's] plea is truly voluntary and not the result of any improper force, threat[,] or promise").

For these reasons, the Court concludes that precluding all inquiry into attorney opinion work product in a guilty plea colloquy does not serve the historical purposes of the work product doctrine because the need to protect attorney work product and the adversarial process is limited, protections are in place to prevent adversarial use of such opinion work product, and the interest in protecting opinion work product is outweighed by the Court's duty to ensure that Defendant's guilty plea and waiver of constitutional rights were made voluntarily, knowingly, and intelligently.

### C. Scope of Exception

Having concluded that the questions at issue in this case implicate attorney opinion work product, and that an exception applies in this unique context, the Court must determine the scope of the exception. As a result of the special protection afforded attorney opinion work product, the Court has described

the exception recognized above as "limited" when comparing it to the crime fraud exception. Based on such special protection, the proper reach of the exception in this case is limited to those documents and communications that bear directly on the Court's mandated determination that the guilty plea is made voluntarily, knowingly, and intelligently. In re Grand Jury Proceedings #5, 401 F.3d at 251. Moreover, the reach of the exception depends upon the demonstration of a "close relationship between the desired" information and the rare and extraordinary circumstances justification for the exception. In re Grand Jury Investigation, 352 F. App'x at 809.

The "yes" "no" questions directly at issue here easily meet that standard. The degree to which any further questions meet the standard must be judged on a case by case, defendant by defendant, question by question basis, taking into consideration the full constellation of interests and concerns before the Court. For example, if Defense counsel had responded that there were no meritorious defenses that would in his opinion lead to a not guilty verdict, and that he was of the opinion that the Defendant's constitutional rights had been observed so far, the inquiry obviously would have ended there. However, if Defense counsel responded that there were meritorious defenses that might lead to a not guilty verdict by a jury, and/or that he did not believe the Defendant's constitutional rights had been

observed so far, the Court would have then decided how to further inquire. Such inquiry would have to proceed on a question by question basis, with the Court seeking to fulfill its obligation while at the same time seeking to prevent unnecessary inquiry into opinion work product by seeking disclosure only to the extent reasonably necessary to fulfill such obligation. See Dinning v. United States, No. 2:12cr84, 2016 U.S. Dist. LEXIS 95052, at *12-*13 n.1 (E.D. Va. 2016) (noting that, after defense counsel advised court there were meritorious defenses defendant might assert, court followed up with defendant to confirm such meritorious defenses were in fact discussed with him but that he wanted to go forward with the plea).

## IV. THE GOVERNMENT'S MOTION FOR INQUIRY

The Government asserts that Defense counsel's responses to the Court during the August 8, 2016 guilty plea hearing regarding the existence of potential meritorious defenses or constitutional violations, and Defense counsel's Response to the Court's Show Cause Order, demonstrate the existence of a conflict of interest or a potential breakdown in communication between Defendant and Defense counsel. ECF No. 41. In response, Defense counsel notes that he and Defendant may have divergent interests in responding to questions during a guilty plea hearing. However, Defense counsel argues, such differences

do not create an impermissible conflict of interest requiring removal of counsel. Defense counsel further argues that there is no evidence of a breakdown in communication, particularly in light of Defendant's responses during the guilty plea hearing regarding the relationship and communication between Defendant and Defense counsel.

The Sixth Amendment provides a defendant with the right to counsel, unhampered by conflicts of interest. See United States v. Williams, 81 F.3d 1321, 1325 (4th Cir. 1996). An attorney is bound to withdraw from representation when such representation would result in a violation of the rules of professional conduct, and a district court may disqualify counsel in such a situation. Va. Rules of Prof'l Conduct r. 1.16(a)(1); see also Model Rules of Prof'l Conduct r. 1.16(a)(1) (Am. Bar Ass'n 2016), Wheat, 486 U.S. at 160. Virginia Rule of Professional Conduct 1.7 states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> > (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph(a), a lawyer may represent a client if each affected client consents after consultation, and:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) the consent from the client is memorialized in writing.

Va. Rules of Prof'l Conduct r. 1.7.  Of course, counsel for a defendant may also be dismissed from such representation if a conflict of interest creates a breakdown in communication between a defendant and defense counsel.  See United States v. Mullen, 32 F.3d 891, 895 (4th Cir. 1994).

In this matter, Defense counsel asserted his attorney work product protection, which is independent of Defendant's work product protection, in response to certain questions asked by the Court during Defendant's guilty plea hearing.  Defendant did not assert such protections and answered all questions put to him by the Court, including questions regarding observance of his constitutional rights, and regarding his communications and relationship with Defense counsel.  As the Court stated above, Defense counsel's failure to state an affirmative or negative response to the Court's questions raised doubt regarding the

voluntariness of Defendant's guilty plea and the Defendant's knowing and intelligent waiver of his constitutional rights. However, as Defense counsel repeatedly stated at the guilty plea hearing and in his submissions to the Court, to the extent that the Court finds such responses to be necessary in determining whether Defendant's guilty plea is voluntary and Defendant's waiver of constitutional rights is knowing and intelligent, Defense counsel is prepared to make a limited waiver of his asserted attorney work product protection and respond to the Court's questions substantively.   Def.'s Resp. to Show Cause Order 14-15, ECF No. 39; Def.'s Consolidated Reply 4, ECF No. 43.

Thus, at this point in the proceedings, the Government has not demonstrated that there is a conflict of interest between Defendant and Defense counsel.   Further, the Government has not demonstrated that such conflict of interest has resulted in a breakdown in communication between Defendant and Defense counsel, or that Defendant's statements during the August 8, 2016 guilty plea hearing regarding Defendant's communications and relationship with Defense counsel are untruthful or inaccurate, such that it would necessitate the removal of Defense counsel from this case.   However, the Court recognizes the possibility that such conflict of interest may develop through the remainder of the guilty plea proceedings in this

matter.   For example, the Court could conceive of such conflict of interest arising if Defense counsel refused to answer the Court's questions, and due to such refusal, the Court could not satisfy itself that Defendant's guilty plea is voluntary or that his waiver of constitutional rights is knowing and intelligent. See, e.g., Thompson, 2009 U.S. Dist. LEXIS 7304, at *1-*4 (explaining that defense counsel's unwillingness to answer the court's guilty plea colloquy questions prevented the court from accepting the defendant's guilty plea).   Therefore, the Court will **TAKE UNDER ADVISEMENT** the Government's Motion for Inquiry pending completion of the guilty plea proceedings in this matter.

## V. CONCLUSION

Because the Court has concluded that an exception to the attorney opinion work product doctrine applies on these unique facts, the Court **ORDERS** that all parties appear before the Court once again in order to allow the Court to inquire of Defense counsel regarding the existence of potential meritorious defenses or constitutional violations related to Defendant's case.

Further, the Court **TAKES UNDER ADVISEMENT** the Government's Motion for Inquiry pending completion of the guilty plea proceedings in this matter.

**IT IS SO ORDERED.**

_____/s/_____
Mark S. Davis
United States District Judge

October 24, 2016
Newport News, Virginia